**NOTICE**

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| NICHOLAS A. KURPJUWEIT, | ) | |
| | ) | Supreme Court No. S-18924 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-22-02058 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| KRYSTAL TIEL, | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 2050 – October 23, 2024 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, John C. Cagle, Judge.

Appearances: Lance Christian Wells, Law Offices of Lance Christian Wells, LLC, Anchorage, for Appellant. Notice of nonparticipation filed by Andy L. Pevehouse, Kenai Law Group, LLC, Kenai, for Appellee.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

## I. INTRODUCTION

In this custody dispute between parents living in different towns, the superior court granted the mother primary physical custody of the child during the school year, with the father having custody for most of the summer. This decision was made to maximize each parent's time with the child, as the mother was mostly

---

\* Entered under Alaska Appellate Rule 214.

unavailable during the summer commercial fishing season. The father appeals this custody decision, arguing the superior court made factual errors and abused its discretion when considering the child's best interests. He also challenges the court's child support award to the mother. Seeing no reversible error or abuse of discretion, we affirm the superior court's decision.

## II. FACTS AND PROCEEDINGS

### A. Facts

Krystal Tiel and Nicholas Kurpjuweit are the parents of Odin,[1] who was born in 2018. Tiel and Kurpjuweit have no other children together and never married. Tiel has two minor daughters from a previous relationship. Tiel and Kurpjuweit's romantic relationship began around 2016 and ended in 2022. For most of this time, Tiel and her two daughters — and later, Odin — lived in Kurpjuweit's home in Houston.

After Tiel and Kurpjuweit separated in 2022, Tiel and her daughters relocated to the Kenai Peninsula. Tiel fishes commercially during the summer season and works as an equipment operator in the winter. Kurpjuweit remains in Houston, where he operates a licensed marijuana cultivation business. By informal agreement, Odin primarily lived with Kurpjuweit while Tiel had visitation three weekends out of every four.

### B. Proceedings

In October 2022 Kurpjuweit filed a petition for custody, seeking sole legal custody and primary physical custody of Odin, with Tiel having visitation. Kurpjuweit also sought an award of child support. Tiel answered and counterclaimed, seeking joint legal custody and shared physical custody. She eventually sought custody on a week-on/week-off basis that would transition to full physical custody with her once Odin began kindergarten.

---

[1] We use a pseudonym to protect the child's privacy.

A custody trial was held in August 2023. Both Tiel and Kurpjuweit testified, as did a number of family members and friends of both parties.

The superior court issued a written decision and custody decree. The court evaluated statutory factors for determining a child's best interests in a custody dispute.[2] The court appeared to find all the relevant factors to be equal between the parents except one. It found that Tiel had a greater willingness to facilitate Odin's relationship with the other parent than Kurpjuweit did.

After weighing these factors, the court awarded joint legal custody and equally shared physical custody on a week-on/week-off basis until the start of the commercial fishing season. After May 2024 Tiel would have primary physical custody during the school year, with Kurpjuweit exercising physical custody during the summer break. The court rejected Kurpjuweit's bid for primary physical custody, explaining that given Tiel's job fishing during the summer season, a grant of primary physical custody to Kurpjuweit "would mean little visitation time for . . . Tiel." The superior

---

[2] These factors are:

(1) the physical, emotional, mental, religious, and social needs of the child; (2) the capability and desire of each parent to meet these needs; (3) the child's preference if the child is of sufficient age and capacity to form a preference; (4) the love and affection existing between the child and each parent; (5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity; (6) the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child . . . ; (7) any evidence of domestic violence, child abuse, or child neglect . . . ; (8) evidence that substance abuse by either parent or other member of the household directly affects the well-being of the child; and (9) any other factors that the court considers pertinent.

AS 25.24.150(c).

court explained that Tiel's proposal to share custody "week on week off then shifting to [Odin] living with her in the school year given her May through August season would ensure the most access to both parents for [Odin]." The court found this arrangement to be in Odin's best interests. The court awarded Tiel child support pursuant to Alaska Civil Rule 90.3.[3]

Kurpjuweit appeals the custody and child support orders.

## III. STANDARD OF REVIEW

The superior court has broad discretion when making a child custody determination.[4] We review its factual findings under the clearly erroneous standard and will reverse such findings only "when a review of the record leaves [us] with a definite and firm conviction that the superior court has made a mistake."[5] We grant "particular deference to the [superior] court's factual findings when they are based primarily on oral testimony, because the [superior] court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence."[6] We review the superior court's analysis of the best interests factors for abuse of discretion, which exists if "the superior court 'considers improper factors in making its custody

---

[3]    The superior court's order mistakenly stated that Tiel and Kurpjuweit entered an agreement as to divorce, when in fact they were never married. This mistake had no impact on the custody determination before us on appeal. *Pingree v. Cossette*, 424 P.3d 371, 377 (Alaska 2018) ("Clearly erroneous fact findings are reversible error when they are 'controlling,' but not if they are immaterial." (quoting *Vachon v. Pugliese*, 931 P.2d 371, 375 (Alaska 1996))); *see also* Alaska R. Civ. P. 61 ("The court . . . must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

[4]    *Thompson v. Thompson*, 454 P.3d 981, 989 (Alaska 2019) (citing *Geldermann v. Geldermann*, 428 P.3d 477, 481 (Alaska 2018)).

[5]    *Id.* at 988 (alteration in original) (quoting *Geldermann*, 428 P.3d at 481).

[6]    *Stephanie F. v. George C.*, 270 P.3d 737, 745 (Alaska 2012) (quoting *Millette v. Millette*, 177 P.3d 258, 261 (Alaska 2008), *overruled on other grounds by Geldermann*, 428 P.3d at 487 n.52).

determination, fails to consider statutorily mandated factors, or assigns disproportionate weight to particular factors while ignoring others.' "[7]

## IV. DISCUSSION

The superior court must determine custody in accordance with the best interests of the child, considering the nine factors set forth in statute.[8] The court is not required to discuss all nine factors; it need only mention the factors that are relevant to its decision.[9] The court "has considerable discretion in determining the importance of each statutory factor in the context of a specific case and is not required to weigh the factors equally."[10]

In this case the superior court expressly considered eight of the nine factors.[11] Some of these factors it found neutral between the parents. For other factors the court did not expressly state whether the factor favored one parent or the other. And it found that one factor, willingness to support the child's relationship with the other parent, favored Tiel. Ultimately the court concluded that awarding primary custody to Tiel gave Odin the most time with both parents in light of Tiel's work schedule.

Kurpjuweit argues that some of the superior court's factual findings are clearly erroneous and that the court abused its discretion in weighing the factors relevant to Odin's best interests. We address each argument in turn.

---

[7] *Id.* (quoting *Misyura v. Misyura*, 242 P.3d 1037, 1039 (Alaska 2010)).

[8] AS 25.24.150(c).

[9] *See Schaeffer-Mathis v. Mathis*, 407 P.3d 485, 492 (Alaska 2017).

[10] *Georgette S.B. v. Scott B.*, 433 P.3d 1165, 1171 (Alaska 2018) (quoting *Judd v. Burns*, 397 P.3d 331, 339-40 (Alaska 2017)).

[11] The court did not discuss the domestic violence factor.

**A.** **The Superior Court Did Not Clearly Err In Finding That Each Parent Was Capable Of Meeting Odin's Needs.**

When considering custody, the superior court must consider the child's needs and each parent's ability to meet those needs.[12] The superior court did not expressly state whether these factors favored Tiel or Kurpjuweit. But it is clear that the court found both parents willing and able to meet Odin's needs and that any difference between the parents was not decisive in its custody ruling, which was based on maximizing Odin's time with each parent. Kurpjuweit argues on appeal that the court clearly erred by not finding these factors favored primary custody with him. Kurpjuweit asserts that he provided Odin's "complete care," including "food, clothing, shelter, school, and extracurricular activities," for most of his life. Kurpjuweit expresses concern for Tiel's capacity to financially provide for Odin, claiming that his income is both higher and more reliable due to the "turbulent" nature of the commercial fishing industry.

We see no clear error in the court's findings about Odin's needs and the parents' ability to meet them. The court found that "[Odin] has no needs that are higher than most children of his age." The court also discussed testimony indicating that both Tiel and Kurpjuweit are attentive and loving parents. Kurpjuweit emphasizes that he had been the parent who arranged Odin's education, provided his medical care, and met other day-to-day needs. The court acknowledged that Kurpjuweit had been Odin's primary caregiver for most of his life. However, these facts alone are not decisive because "there is no custodial preference for the primary [caregiver] in Alaska."[13] And the absence of specific evidence about Tiel meeting these day-to-day needs for Odin does not convince us that she was incapable of meeting these needs.

---

[12] AS 25.24.150(c)(1)-(2).

[13] *Blanton v. Yourkowski*, 180 P.3d 948, 953 (Alaska 2008).

Kurpjuweit asserts that he would be a more stable provider for Odin. He disagrees with the court's factual finding that Tiel would make "close to sixty thousand" dollars annually. He contends that these figures are unsupported by any financial statements or expert testimony. But these findings are based on Tiel's testimony, in which she estimated her future income based on past earnings. This testimony is competent evidence of income, even if there was no corroborating documentation. The trial court was within its discretion to find this unrebutted testimony credible.[14] Kurpjuweit also emphasizes that the market for salmon is "turbulent," but even if true that does not mean that a parent who fishes commercially for a living is incapable of meeting a child's needs.

Kurpjuweit fails to show that the superior court clearly erred by not finding him more willing and able to provide for Odin's needs than Tiel.

**B.** **The Superior Court Did Not Clearly Err In Weighing Stability And Continuity Of Care.**

When determining custody the court must consider "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity."[15] The superior court did not expressly state which parent this factor favored, but it rejected Kurpjuweit's argument that Tiel was unstable and could not provide Odin with a stable environment.

Kurpjuweit's argument on this point is closely related to his argument about the parents' respective ability to meet Odin's needs. Kurpjuweit argues that Tiel's work history and impulsive decision-making prove that she is unstable. He also suggests that Tiel will not support Odin's education because she has ADHD and

---

[14]    *See Schymanski v. Conventz*, 674 P.2d 281, 286-87 (Alaska 1983).

[15]    AS 25.24.150(c)(5).

because one of her daughters failed many classes. Accordingly, Kurpjuweit maintains that he provides a more stable environment, so he should have primary custody.

The superior court did not clearly err in finding that Tiel was not as "unstable" as Kurpjuweit suggests. The court noted that Tiel's daughter's poor academic performance was "likely impacted by excessive absences" and "could be attributed to either parent," considering that she lived with both of them at the relevant time. The court also noted that Tiel had "maintain[ed] employment with Costco for well over a decade and now has apparent stability in her occupation in commercial fishing with her father's permits, but with her boyfriend's boats." The court clearly considered the stability of Tiel's environment and found Kurpjuweit's argument unpersuasive. We see no clear error in the court's finding that Tiel is "not as unstable as [Kurpjuweit] asserts."

### C. The Superior Court Did Not Clearly Err In Finding That Tiel Was More Likely To Facilitate Odin's Relationship With Kurpjuweit Than Vice-Versa.

A parent's ability and willingness to facilitate the child's relationship with the other parent is one of the factors the superior court must consider when deciding custody.[16] The superior court found "clear evidence that Mr. Kurpjuweit is not good at communicati[ng] with Ms. Tiel." The court agreed with Tiel that Odin's enrollment in preschool "was done, in part, to thwart Ms. Tiel's custody with their son." Kurpjuweit argues this finding was clearly erroneous. He asserts that he enrolled Odin in a preschool located in Houston only to further his son's education, not to make it difficult for Tiel to see him.

There is evidence to support the superior court's finding. Tiel testified that Kurpjuweit "actively misled" her about Odin's school schedule by implying he was

---

[16]     AS 25.24.150(c)(6).

still in preschool classes several times per week. But in the summer, Odin switched from three-day-a-week preschool classes to a once-weekly, hour-long "[n]inja class." Tiel testified that she only saw Odin a "handful of times" in the summer of 2023 because Kurpjuweit did not reveal that Odin would be spending less time in class. Kurpjuweit testified that he "figured [Tiel] knew since the school year was over and [preschool] follows the school calendar." Tiel also testified that when she visited Odin in Houston, Kurpjuweit denied her request to take Odin to lunch without third-party supervision. "[T]he trial court, not this court, judges the credibility of witnesses and weighs conflicting evidence."[17] We cannot say the superior court clearly erred in finding Tiel's testimony credible or in drawing the conclusion that Kurpjuweit had acted to prevent her spending more time with Odin.

### D. The Superior Court Did Not Clearly Err In Finding That There Was No Evidence Of Substance Abuse Having A Negative Impact On Odin While In Tiel's Care.

When determining custody the superior court must consider evidence that substance abuse by either parent or other member of the household directly affects the well-being of the child.[18] The superior court found "no evidence [that] substance abuse . . . has a negative impact on the child." Kurpjuweit argues that "[w]hile the trial court weighed this equally between the parties, it is not equally weighted."[19] He does not claim that Tiel's substance use harmed Odin; rather, he asserts that Tiel exposed her children to people who abuse alcohol. Specifically, he expressed concern about one of Tiel's friends "being an alcoholic and potentially driving intoxicated with their children

---

[17] *Weathers v. Weathers*, 425 P.3d 131, 136 (Alaska 2018).

[18] AS 25.24.150(c)(8).

[19] Though Kurpjuweit's argument is described in terms of weighing the factor, it appears that he is disputing the court's factual finding that there is no evidence that substance abuse in the household had affected Odin.

in the car." He also claims that Tiel allowed her daughters to drive with her ex-husband while he was intoxicated.[20]

We see no clear error in the superior court's factual finding. Tiel testified that at some time in the past, she was worried about the friend's alcohol consumption. But Kurpjuweit does not cite evidence suggesting that the friend's alcohol consumption had any impact on Odin. Tiel testified that she had probably told Kurpjuweit something along the lines of: "[she] wouldn't trust the kids with [the friend] in a car." The testimony does not suggest that Tiel actually allowed her children to ride with the friend, let alone while intoxicated. Similarly, despite Kurpjuweit's argument that Tiel sometimes allowed her ex-husband to drive their daughters while intoxicated, there is no indication that Odin was ever allowed to ride in his vehicle.

We are not left with a definite and firm conviction that the superior court erred in declining to find that Odin was at risk of being negatively affected by substance abuse while in Tiel's care.

## E. The Superior Court Did Not Abuse Its Discretion By Awarding Tiel Primary Physical Custody In Order To Maximize Odin's Time With Each Parent.

After evaluating the statutory best interests factors, the superior court ultimately decided that it was best for Odin to spend the most time possible with each parent. Because of Tiel's commercial fishing schedule, that meant giving Tiel custody

---

[20] Kurpjuweit appears to misunderstand the "substance abuse" factor. The superior court must consider substance abuse by a parent "or other members of the household" that affects the child's well-being. AS 25.24.150(c)(8). Neither Tiel's friend nor her ex-husband is a member of Tiel's household. Their substance abuse is not strictly relevant under AS 25.24.150(c)(8). Nevertheless, evidence that Tiel placed her children in danger by allowing them to be driven by intoxicated people would be relevant to a different best interests factor: her ability to meet Odin's need for safety. AS 25.24.150(c)(2). Therefore we address Kurpjuweit's argument that the court made a factual error in disregarding this alleged risk to Odin.

during the school year and Kurpjuweit custody during the summer. We see no abuse of discretion in this decision.

Kurpjuweit disagrees with the court's finding that given Tiel's employment, a grant of primary physical custody to Kurpjuweit would mean little custody time for Tiel. But the court was clearly correct. Tiel's commercial fishing schedule begins in May or early June and ends in early August. If the court granted custody to Kurpjuweit during the school year, Tiel would have time with Odin only during a small fraction of the year — winter and spring breaks, and some weekends. The court did not clearly err in finding that this arrangement would give Odin very little time with his mother.[21]

### F. The Superior Court Did Not Err In Awarding Child Support To Tiel.

The parent having primary physical custody of a child is entitled to child support.[22] In this case the superior court awarded primary custody and child support to Tiel. Kurpjuweit argues that if we were to reverse and remand the court's custody determination "child support will need to be recalculated . . . with [Tiel] providing her DR-305, and supporting documentation so a determination as to her actual income may be made." But we do not reverse the court's custody award, so there is no basis to vacate the child support order.

## V. CONCLUSION

We AFFIRM the judgment of the superior court.

---

[21] *See, e.g.*, *Pingree v. Cossette*, 424 P.3d 371, 382 (Alaska 2018) (holding no abuse of discretion in granting commercial fisherman primary physical custody based on parents' work schedules when best interest factors did not favor either parent).

[22] Alaska R. Civ. P. 90.3(a); *see, e.g.*, *Turinsky v. Long*, 910 P.2d 590, 598 (Alaska 1996).